**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:23-cv-157 |
| Plaintiff, | : | |
| v. | : | |
| SIXTY-THREE THOUSAND TWO HUNDRED FIVE AND 00/100 DOLLARS ($63,205.00) IN UNITED STATES CURRENCY, | : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| Defendant. | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

**NATURE OF THE ACTION**

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

**THE DEFENDANT IN REM**

2. The defendant is Sixty-Three Thousand Two Hundred Five and 00/100 Dollars ($63,205.00) in United States Currency. The Drug Enforcement Administration ("DEA") seized the defendant on or about July 28, 2020, from Brian Thomas's carry-on bag, following a consensual encounter with him at the John Glenn Columbus International Airport. The defendant

has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 21 U.S.C. § 881(a)(6). This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendant was found in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6. The defendant is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

7. On or about July 27, 2020, members of the Columbus, Ohio Airport DEA Group at John Glenn Columbus International Airport ("CMH") received information regarding the suspicious travel of a passenger identified as Brian Thomas ("Thomas").

8. The investigators learned that on July 24, 2020, a round-trip ticket was purchased from American Airlines for Thomas to fly from Los Angeles, California to Columbus, Ohio, on July 27, 2020. Thomas was scheduled to be in town for approximately 15 hours and was booked to return to Los Angeles on the same flight, American Airlines Flight #1492, the next day.

9. A check of Thomas's criminal history revealed several years of arrests related to marijuana cultivation and/or distribution, kidnapping, and domestic violence.

10. After reviewing this information, the investigators decided to speak to Thomas about his travel. At approximately 3:00 p.m. on July 28, 2020, DEA Special Agent Jonathan Hanley ("SA Hanley") along with DEA Task Force Officers Eric Doyle ("TFO Doyle") and Andrew D'Orazio ("TFO D'Orazio") went to the CMH gate area assigned for American Airlines Flight #1492's departure. The investigators were in plain clothes with no weapons or badges displayed.

11. At the gate, TFO Doyle observed Thomas's name appear on the airline screen when his boarding pass was scanned. Thomas was carrying a hard-sided roller bag.

12. TFO D'Orazio approached Thomas in a way as not to block his freedom of movement, identified himself as a law enforcement officer, and asked Thomas if he would speak with the officers about his ticket purchase and short stay in Columbus. Thomas agreed to speak to TFO D'Orazio.

13. TFO D'Orazio asked Thomas the reason for his travel and why he had booked a ticket with such a short stay in Columbus. Thomas stated that he buys and sells cars for a living and that he was in town to transfer cars from California. When TFO D'Orazio asked Thomas how he was transferring cars when he had flown into Columbus, Thomas then stated that he had not actually shipped any cars but that he had met with a business partner to receive money for the

purchase of cars in California. According to Thomas, those cars would be shipped to Ohio.

14. As they spoke, Thomas advised TFO D'Orazio that he was carrying approximately $50,000.00, but he could not provide an explanation as to why he did not know exactly how much money was in his possession.

15. When asked, Thomas advised that he did not have any paperwork or digital proof for the money he was carrying or basic information on the cars to be purchased with the money. Thomas did not respond when asked to explain why cars would be shipped from California to Ohio.

16. After learning all this, TFO D'Orazio asked Thomas if he could search the bag he was carrying. Thomas consented to the search.

17. During the search of Thomas's carry-on bag, TFO D'Orazio located three leather money cases. Two of the cases were locked. When asked, Thomas advised that he could open the cases and unlocked them. Upon opening the money cases, TFO D'Orazio observed a strong odor of marijuana coming from inside them and discovered that they held rubber-banded bundles of currency. TFO D'Orazio noted that the bills ranged from $1.00 to $100.00 denominations.

18. Based on his training and experience, TFO D'Orazio estimated that each rubber-banded bundle held $1,000.00, known to investigators as "quick-count" bundles which are commonly used by those involved in illegal narcotics activity.

19. TFO D'Orazio asked Thomas if he had any narcotics in his bag. Thomas acknowledged that he did and explained that he had marijuana "blunts" inside a plastic sandwich baggie in his shaving bag.

20. After finding a large amount of currency in cases that smelled of marijuana and finding the suspected marijuana in Thomas's bag, TFO D'Orazio asked Thomas if he could call

his business partner with whom he had met to allow TFO D'Orazio to speak to him. Thomas agreed and dialed a contact in his cellular telephone listed as "Big 4Teen," who was later identified as Justin Schlitt ("Schlitt").

21. When Schlitt was reached on Thomas's cellular telephone, TFO D'Orazio asked Schlitt what type of business he and Thomas ran together. Schlitt advised that they ran a men's poker social club and acknowledged that the money in Thomas's possession was for the poker social club. TFO D'Orazio then told Schlitt that Thomas had stated he was in Columbus to transfer cars. Schlitt replied that he and Thomas also ran a used car business.

22. TFO D'Orazio asked Schlitt if he had any proof of a money transfer to Thomas or any business paperwork that he could send via a photograph on the cellular telephone to assist Thomas. Schlitt stated that he did not and advised that Thomas should have thought of that before flying out with money.

23. After speaking with Schlitt, TFO D'Orazio asked Thomas why he had not mentioned the poker club. Thomas replied that it was another business that he and Schlitt ran together but did not answer a question about how the poker club made money.

24. Based on this investigation and TFO D'Orazio's training and experience, the investigators advised Thomas that the currency located in his carry-on bag was being administratively seized as drug proceeds. The investigators also advised Thomas that his cellular telephone and the suspected marijuana would be seized for further investigation. The investigators took custody of the currency, cellular telephone, and suspected marijuana and provided Thomas with a custody receipt form for the property.

25. The investigators turned over the suspected marijuana to the Ohio State Highway Patrol Crime Lab for testing at which time it was determined that the joints contained insufficient

plant material for full testing.

26. Following their consensual encounter with Thomas, the investigators returned to the DEA's airport office and requested assistance from Columbus Regional Airport Authority Police K-9 Officer Dale Beam ("Officer Beam") and K-9 "TRex" to conduct a narcotic detection K-9 sniff at the DEA's airport office on a package that contained the currency seized from Thomas's carry-on bag.

27. This money was placed in a new United States Postal Service Priority Mail package ("USPS package") and sealed. The narcotic detection K-9 sniff consisted of two separate K-9 sniffs as follows.

  a. Ten USPS packages were placed in a circle in the DEA office. Three of the packages were empty, and seven contained shredded, circulated and un-circulated currency. Officer Beam and K-9 TRex entered the area, and Officer Beam gave K-9 TRex the command to search. K-9 TRex did not show a change in behavior in the room or on the ten packages. Officer Beam and K-9 TRex then left the area.

  b. The DEA officers replaced one of the packages with the USPS package that contained the money from Thomas's bag. The location of the money was unknown to Officer Beam. Officer Beam and K-9 TRex returned to the area, and Officer Beam gave K-9 TRex the command to search. While searching, K-9 T-Rex showed a change of behavior on one of the packages, that is, his breathing quickened, and he stopped quickly at the package. K-9 T-Rex then placed his front paws on top of the package and began to scratch the package, indicating a positive alert for the odor of narcotics on the package. The DEA officers advised

6

Officer Beam that it was the package containing the money seized from Thomas's bag.

28. An official count of the United States currency seized from Thomas's bag revealed that the currency totaled $63,205.00 (the defendant):

| Denomination | Quantity | Total |
|---:|---:|---:|
| $100 | 116 | $11,600.00 |
| $50 | 131 | $6,550.00 |
| $20 | 2,217 | $44,340.00 |
| $10 | 40 | $400.00 |
| $5 | 49 | $245.00 |
| $1 | 70 | $70.00 |
| | | $63,205.00 |

29. On or about September 10, 2020, investigators obtained a Search Warrant from Franklin County Municipal Court Judge Jarrod B. Skinner for the cellular telephone seized from Thomas. During a review of the contents of Thomas's cellular telephone, investigators observed numerous images of what appears to be bulk quantities of marijuana.

30. Based on the foregoing facts, the United States asserts that the defendant, $63,205.00 in United States currency, represents property furnished or intended to be furnished in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846. Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

31. On October 17, 2022, the DEA received a valid administrative claim from Schlitt in which he asserted an ownership interest in the currency seized from Thomas's bag (the defendant). In his claim, Schlitt stated, "[T]his is my money for me because I am the owner of the U.S. currency as such it belongs to me and no one else." No other information or documents were included in support of the claim.

## **CLAIM FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

    Respectfully submitted,

    KENNETH L. PARKER
    United States Attorney

    s/Deborah D. Grimes
    DEBORAH D. GRIMES (0078698)
    Assistant United States Attorney
    Attorney for Plaintiff
    221 East Fourth Street, Suite 400
    Cincinnati, Ohio 45202
    (513) 684-3711
    Deborah.Grimes@usdoj.gov

## VERIFICATION

I, Eric M. Doyle, hereby verify and declare under the penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

_1-12-2023_
Date

ERIC M. DOYLE, Task Force Officer
Drug Enforcement Administration